MARY C. FOSSLER, Appellant, v. LENA A. BRENIMAN et al., Appellees.

No. 43425.

JULY 31, 1936.

REHEARING DENIED NOVEMBER 19, 1936.

F. J. McGreevy, for appellant.

Mallory & Leming, for appellees.

HAMILTON, J.—In 1920, the defendants, Lena A. Breniman and husband, Dr. E. M. Breniman, purchased of a Mr. Reed, residing in Cedar Falls, Iowa, a 368-acre farm located in Franklin County, Iowa, paying therefor $44,600. The farm is divided by a highway running east and west, 188 acres lying on the south side and 180 acres on the north side of the road. Title was taken in the name of Mrs. Breniman and so remains. At the time of the purchase they borrowed of Henry Fossler $10,000, giving a first mortgage on the 188 acres to secure the same. This is the mortgage which plaintiff, the 73-year-old widow of Henry Fossler, now deceased, is seeking to foreclose. There is a second mortgage of $5,000 on this same tract, held by defendant, Morton H. Fossler. The $10,000 note and mortgage were twice extended, and the interest rate reduced to five per cent. Plaintiff acquired title to the note and mortgage through assignment from the administrator of her husband's estate and accepted the same as a part of her distributive share in his estate. There was no default in payment of interest until 1932. On April 1, 1933, this action was commenced. There was a continuance under the first moratorium statute to March 1, 1935. In February, 1935, the mortgagors applied for a second continuance under chapter 115, acts of the 46th General Assembly, which was resisted by the plaintiff. After a hearing the court granted a continuance until March 1, 1937.

The fact situation brings the case near the borderline, but after a very careful consideration of the facts and the legitimate inferences to be drawn therefrom, we find the weight of the evidence causes the scales to preponderate in plaintiff's favor. Defendants do not reside on the premises. They purchased this farm in 1920 during the land boom in Iowa. According to Dr. Breniman's own testimony, he had bought two or three other

farms and made good on them. He is just one of thousands of other business and professional men throughout Iowa who went into the land business as pure speculation, with the result that when the boom was over he had left on his hands this farm. Like the rest, it has been, figuratively speaking, a "rat hole" down which he has been pouring everything he could make on the farm and in his profession. It is a deplorable situation. Defendants now find the mortgage indebtedness far above the value of the farm. $50 an acre or $9,400 was as high as anyone would put the value. There is considerable waste land on the farm. Much of it is low bottom land, subject to overflow. It is a good corn producing farm when not too wet. The total mortgage indebtedness against this tract is $15,000, plus interest and costs. There is no equity to save. In a last desperate effort, defendants seek refuge in the moratorium statute. While we have never held that this law applies only to farm home owners, it must be recognized that to prevent the ousting of farmers from their homes was an important consideration in the enactment of the moratorium laws. This widow lady, the mortgagee, has some rights which, under a fair, candid and equitable consideration of the case, must be recognized. Her sustenance depends largely upon farm income. Her daughter lives upon the old home farm where Henry Fossler and his wife, Mary, lived for many years and reared their family. The interest on the mortgage she holds against the daughter, and upon this $10,000 mortgage she holds against the defendants, which represents actual cash loaned to the defendants for use in their land dealings, constitutes the major portion of her income. She, too, is a farmer's wife, not a money lender or speculator. She only asks for what rightfully belongs to her. She has no desire to own the defendants' farm.

It appears that defendants made a very earnest effort to bring about a composition among their creditors. Mrs. Fossler offered at that time and also at the trial still offered to accept $7,500 in full settlement. Defendants admit that they only offered her 50 cents on the dollar or $5,000. Mrs. Breniman persisted in her testimony in the statement that she offered plaintiff $7,500 and was ready to pay this sum, but the plaintiff refused to attend the conciliation board meeting. Therefore she gave up trying to borrow the money from the Federal Land Bank, thus leaving the impression that Mrs. Fossler refused to

accept the $7,500. But the doctor's testimony throws a different light on the subject. He admits that out of this $7,500 they were going to pay the plaintiff, she was required to take care of another $2,500 item of indebtedness which would reduce the $7,500 in the amount required to settle this item. They both say in substance that because plaintiff refused to accept their offer they used what money they could raise to settle with other creditors who were willing to compromise. The result was that plaintiff received nothing, while more than $2,000 was applied in the settlement of debts owing to other persons. During the period of the first continuation, the taxes were paid by the receiver, and he had on hands some $500 in money and grain at the time of the trial which he said was available. But strangely enough, he had paid none of it to the plaintiff. Of course, defendants are not to blame for the dereliction of the officer of the court.

The evidence shows the defendants own this 180-acre tract of land across the road with only $2,500 against it. They own a home in town, a business property and some stock and machinery on the farm. We think the evidence warrants us in saying that defendants could, and would be willing to, make use of all their available means to liquidate this indebtedness on terms suitable to them. While it is a laudable thing for parties in difficulty of any kind to amicably adjust such difficulties if possible, however, the moratorium statute was not intended to force settlement at 50 cents on the dollar nor to penalize those who refused to consent to such settlements.

The equities are with the plaintiff. The order of the court granting continuance to March 1, 1937, is reversed. The conclusion reached makes it improper to pass upon the question raised as to the constitutionality of the second moratorium statute found in chapter 115, acts of the Forty-sixth General Assembly.—Reversed.

PARSONS, C. J., and RICHARDS, DONEGAN, and MITCHELL, JJ., concur.